May it please the court and may I express my appreciation to the court for the break in between these two cases so that I could make a quick run to the bathroom and collect my thoughts. It is appreciated. It's hard to do two back-to-back. It is. I was prepared, but I really do appreciate the opportunity to stretch out a little bit. I'd start by pointing to the supplemental authority that the appellees in this matter have brought forward. I think that it helps to examine those three cases in light of Neves and to compare them to this case in order to get to really the heart of this case. All three of those cases, Lund, Hinkle, and Osprey, all deal with a situation where there is some sort of unlawful act by the person that is later arrested or charged with trespassing or has their speech infringed upon by the government. I think that that distinction is what's really important in this case because where this case really begins to go awry is right at the very beginning. At the very beginning, Mr. Fenn was engaged in nothing resembling any sort of criminal activity that would give rise to trespassing him. It certainly didn't give any rise to excluding him from a traditional forum where he was engaged in peaceful protest. This is very different from, for instance, I believe it was Lund where you had a person driving down a one-way street the wrong direction. Mr. Fenn did nothing that resembles driving down the one-way street the wrong direction here. There's no... Mr. Dunn, why wouldn't the trespass authorization based on Mr. Hicks' signature, why wouldn't his going back to 301 South Fox Street, why wouldn't that have been criminal, at least probable cause to believe that he had committed criminal trespass? I would liken this to an officer that goes out and manufactures facts that are just plainly erroneous in order to obtain a warrant. I think this is the same... Well, is it really the same? For example, a sexual assault victim says to the police, I don't want to press charges. I was sexually assaulted, but it's a harrowing experience. And the DA comes and says, you know, we can't prosecute this person. It's important. We want you to sign a criminal complaint. Why is that any different than what the officers did in going to Mr. Hicks? After all, this wasn't the first trespass authorization. You had one from Ms. Miller, one from Ms. Blyth, and I don't know, but I presume that those had expired and he was continuing to come to the building. So why does it vitiate probable cause that they had been proactive in procuring Mr. Hicks' signature? Well, Your Honor, we haven't addressed the previous exclusion from the traditional forum, the expired trespass orders, as it were. And the reason we haven't addressed those, even though we think that they were wrong, is because they were far enough back in time and they had expired. We're not trying to address those, but they weren't based upon any facts that were any more legitimate for obtaining a trespass order than the current one. And it's the factual... I think I convicted. I mean, it's hard to say that there was no grounds for it because he was convicted, right, of conducting business without a license in that very building. So I mean, it's hard to say. It's just completely preposterous. The trespass orders were obtained before he was convicted of having a business. The trespass orders were obtained because they didn't like him being in there. Again, it was the same situation as we have here. He's in there bad-mouthing their business that they want to be doing, which is a government business, and he's critical of that because they took away the senior center from these seniors and he thought that that was wrong. So he's expressing his frustration. They trespassed him in the first instance for expressing that frustration, not in any sort of violent or dangerous manner or even profane manner. Nothing along those lines. They went ahead and trespassed him. Then, of course, there's the conviction with the business without a license. And then after those had expired, he ends up back, knowing full well that they had expired, that there's now a new tenant in the senior center, which is Spaceport America, which is a government agency. He goes in, again, peacefully pamphleting and protesting and handing out cards and explaining to people why this was an improper use of a government building and why it was wrong to put the seniors out onto the street and into the cold. And he does so quietly and peacefully again in a public area. He's confronted by the police officers. They tell him he has to leave. He says, no, I have a right to be here. That trespass order is no longer valid. Knowing full well that he's correct, that he has a right to be there, that he hasn't been trespassed out, the action of then loading up and going to Las Cruces to ask the director of Spaceport America to give them a trespass order so that they can kick this guy out that's criticizing Spaceport America, that's where I say it's more akin to manufacturing probable cause. And that's exactly what they did. They said, well, he's not really doing anything wrong, but we don't like what he's saying, which is viewpoint discrimination at its core. He didn't do anything other than express a viewpoint they didn't agree with. And for that, they went and obtained from Mr. Hicks, and he, knowing full well that this was on the basis of what Mr. Finn was saying, he agreed to give them a trespass order. And he cooperated in this endeavor to exclude somebody on the basis of their viewpoint. And then they go back, they serve him with a trespass order, which Mr. Finn really doesn't believe is valid, because he hasn't done anything that warrants trespassing him from a traditional place. And then he goes back. And when he goes back, that's when they arrest him. After they've gone out and put him in this position, where they've discriminated against his viewpoint, they proceed on. And then there's a discussion about whether or not the, and I want to address this, whether or not the dismissal nolo prosecce was appropriate, or whether it somehow doesn't have an effect of terminating the malicious prosecution. I really do believe that this is a different situation. Mr. Finn had had filed motions to dismiss pro se, to have the case dismissed, and those were denied. After they were denied, as a result of my entry into the case, and some communications that went on, then the case was dismissed nolo prosecce by the DA's office. And the DA's office is involved in what is traditionally a, a officer prosecuted case That raises the specter that there's more to this, and there's somebody who's actually looked at this and said, wait, hold on, we shouldn't have been prosecuting this guy. And then it terminates. So it did terminate in his favor. Maybe not as a direct result of his motions, but certainly his motions, I believe, contributed to that. And I think the court can look at that and say, Mr. Finn did what he needed to to terminate the malicious prosecution that they would have continued on and, and ultimately convicted him of if he hadn't stepped up and done his own motion pro se, or, or retained me to come in and try to shut down this bad situation. Judge Lucero, I think you're trying to ask a question, but you're on mute, and I apologize. I just noticed you were talking while he's on muting. Can you explain? I was, I don't know how I got there, but I did, did indeed, I'd like to ask a question and that is this, who issued the trespass authorizations? The trespass authorization was taken by the chief of police down to Dan Hicks and said, and it was offered to him and said, Hey, we want to trespass this guy out of your property, sign this. And Dan Hicks did. And then they filed it and served it with Mr. Finn. So it was never vetted by a court or entered by a court where you could have challenged it? No, there was no, no due process that procedural due process, at least that attached to that trespass notice before it was issued to him. So in terms of, of giving him some amount of due process, he really didn't get any before they trespassed him from the building. In these proceedings, have you challenged that due process, which asserted due process violation? I don't know that we have focused on that, the orders or the validity of the, we have addressed the validity of the orders, um, on the basis of, of the malicious prosecution. And this gets again to that point I was just making about manufacturing probable cause and getting a, what is a, a fraudulent trespass notice and then using that as a means to arrest. Well, that's what I'm, that's what I'm asking is the, have you challenged those collaterally or otherwise, or is that issue before us? We've challenged those collaterally in front of the district court. They weren't really focused on in either the district court's decision or in the briefing very heavily, but that was collaterally addressed. It would seem to me that if they were invalid, that, uh, that bolsters your first amendment case. But, uh, if you didn't challenge them or if you left them idle, that, uh, somehow they may have some facial validity. And that we did challenge those specifically addressing, uh, Mr. Hicks, the director of the spaceport and his actions and his participation. And addressing the fact that his only real reason for, uh, excluding Mr. Finn was for viewpoint and discrimination. And there was no opportunity for Mr. Finn to, to address whether or not he should have been excluded from the building before he was, we did, we did address that in the briefing as, as to Mr. Hicks, less so with, uh, of course the police officers, which were operating on what they called manufactured probable cause. So the due process that argument doesn't really quite apply to them the same way it does to Mr. Hicks. Thank you. Does the, does the New Mexico's criminal trespass statute 30-14-1, um, apply here? And could the police have relied on that? They, they could your honor for certain types of spaces, those that statute, and there is case law that surrounds that, that these, that that statute is designed to limit somebody from being in what is not sort of a commonplace someplace where they shouldn't be, where they can be disruptive. And they can, uh, interfere with the government's business, not they, I don't believe it applies to your traditional forum. And especially when the person isn't acting in anything other than sort of a peaceful manner. Um, maybe if somebody is trespassing into city parks and they're causing damage, I could, I, or they're not trespassing, but they're going into city parks and they're causing damage. I could see where a judge could issue a trespass order saying, well, if you can't stop destroying government property, we're not going to let you go back on that property. But even then, I don't know that that still, um, would be proper under a first amendment analysis. And then, um, I think the briefs indicated that there was some allegations of conduct by your client that, um, was considered harassing of employees or other visitors to the, to the facility. Um, and that, that not withstanding, um, his, his protests, that there was other conduct that was concerning to the, um, the people that work there. There are those allegations, but there is nothing that would conform to that type of an allegation. No factual basis, nothing is, is recorded where he's been loud or profane or obnoxious in any sort of fashion other than by his mere presence. And of course, just the bare allegation that he was, that he annoyed them is not enough to exclude him from his speech in a traditional forum. But if it's not, not a traditional public forum, the defendant, Mr. Hicks argued in his red brief that this is not a traditional public forum. You didn't file a reply brief. And we have a case, uh, about six months ago, Hassan versus AIG that says if the reply brief he or she has waived any non-obvious, uh, defects in the appellee's argument, why shouldn't we consider your arguments waived with regard to the existence of a traditional public forum? Um, Your Honor, I believe because we addressed those arguments that this was a traditional forum and explained why it was in our opening brief, we didn't feel it was necessary to rehash it. The, the mere, um, disagreement in a response brief from what we had already put into an, into our opening brief, I don't think warranted a reply in this instance. Um, we certainly could have. Um, I wasn't aware of that case from six months ago. I have, I apologize. It wasn't on my radar, but, um, I, I think we've addressed why this was a traditional forum and I don't really think that there's a legitimate dispute as to the fact that traditional, traditional forum, this is the open common area of a spaceport visitor center, which during regular hours is open to anybody in the public to enter without any sort of, they don't even have to pay for admission. It's just, you walk in, you walk out, there's nothing to it. It's the same as a park where you could walk in and walk out to say that it's not a traditional forum is simply erroneous. Now there is a distinction when it comes to, um, Geronimo trails, which you'll see is one of those earlier, uh, exclusion excluded places that he can't go to. He, Mr. Finn never went back into Geronimo trails after that first TR, um, uh, trespass order was applied. Um, and he still has never gone back into that area. That's not part of what we're talking about. This is a different part of the building that is open to the public. And even though that part of the building is open to the public, he still never violated that and went back there. He didn't even attempt to, uh, if the court will permit it, I'd like to retain my last minute for rebuttal. Yeah, you may have a council. Um, I think Mr. Sadowski is going first. Is that correct? Oh, yes, that's correct. You may proceed. Thank you, your honor. And, uh, may it please the court. My name is Matthew Sadowski. I represent Dan Hicks, who is the CEO of Spaceport America. There are multiple appellees in this case, and we're, uh, splitting the allocated time equally today. Um, as we've just discussed the appellant, Mr. Finn has alleged that Mr. Hicks has violated his first amendment rights by signing this trespass order that bars appellant from entering the building that's owned by the city of truth or consequences in which Spaceport America leases space for a visitor center. Um, what, what was raised in the briefing, uh, but, but not raised yet in this argument today is the issue of qualified immunity and Spaceport America, a private entity, a, a nonprofit entity. What, what's its legal status? Your honor, Spaceport America is a New Mexico governmental entity. Um, that operates the, the Spaceport in Southern New Mexico. Thank you. Um, this court has addressed qualified immunity in, in written opinions, many, many times. We we've already had discussion of the standard this morning, but, but as everyone is aware, we have, we have a two pronged qualified immunity test. Uh, Mr. Hicks has asserted a qualified immunity defense. Um, the, the burden that it places on plaintiff is to, uh, clearly established to, to provide clearly established law demonstrating that the conduct that is alleged constitutes a constitutional violation. Um, it's also well established. The district district courts are afforded broad discretion to decide whether to address the constitutional question or the clearly established law question first. And in this case, the district court, uh, has addressed the, the clearly established prong of the test first and ruled that Mr. Hicks is entitled to, to qualified immunity. The, this ruling as stated in the district court order, um, arises directly from the fact that Mr. Fenn has not cited any case from any jurisdiction that indicates to any signing a trespass order in and of itself and nothing more violates anyone's first amendment rights. And in the absence of any, uh, presidential or, or otherwise case law, presidential or persuasive case law, the district court found that a dismissal was appropriate. Well, there are a lot of people who don't like panhandling and pam pamphleteering at airports. Uh, would it be appropriate to issue trespass orders against those types of solicitors and pamphleteers? I think the answer to that question would come down to whether or not, uh, those that forum was determined as a matter of law to be a traditional public forum. Um, as we've argued in our brief, this is not a traditional public forum. So I, I couldn't say your honor, whether or not an airport, uh, is or isn't, but I, I can argue that, uh, this particular environment is an appropriate environment to issue a trespass order based on its character. Um, again, it presented with another opportunity in appellate briefing to offer, uh, examples that would put a governmental official on notice that, uh, signing a trespass order constitutes a first amendment violation. The appellate briefing also, um, provides no insight on that topic. And for this reason alone, um, on a straight qualified immunity analysis, uh, Mr. Hicks is entitled to, uh, to the, to affirmance of the dismissal. Um, what the appellate briefing does argue is, is simply that a constitutional violation has occurred. Um, as, as this court has pointed out, as the United States Supreme Court has pointed out, uh, courts are, are discouraged from engaging in a constitutional analysis unnecessarily where, where a qualified immunity, uh, ruling can be otherwise applied, but, but the conduct, if we want to look at the constitutional issue, the conduct at issue in this case is, is the, the mere signing of a trespass order. And we're here on a motion to dismiss and the, and the relevant facts for the those that are alleged in the complaint. And, um, as, as council stated, this case arose from a decision to convert a former senior center into a multi-use property. It's true. Zdowski. Uh, can I, I want to focus on what you just said, and that is because it is a motion to dismiss on cap one, we are confined to the allegations in the complaint. And as I recall, paragraph 69 of the complaint specifically alleged that the charges were unjustified. And one could say, particularly with a generous lens of emotion to dismiss under 12 B six, that unjustified charges are those charges that lack probable cause. Why, why doesn't that at least at prong one of qualified immunity satisfy the existence of a constitutional violation? Well, your honor, I would say as a threshold matter, paragraph 69 of the complaint falls within the malicious prosecution and abuse of process claim. And that's not alleged against Mr. Hicks, Mr. But, but, but it's still, even in the context of an allegation against another defendant, he has alleged that the charges were unjustified. Can we, can we, or should we, uh, disregard a specific factual allegation though lodged against another defendant? Well, I, I'm not sure your honor that, um, what I, what I would say, I suppose is that, um, that, that, that is a, a relatively conclusory allegation and that the facts in the, in the body of the complaint, paragraphs 10 or 11 through 30, 35 is where the last fact that could apply to Mr. Hicks is those facts do not support the idea, um, that, uh, that the no contrived as, as alleged by counsel, what the complaint does say, uh, between paragraphs, um, 11 and 33 are that, uh, Mr. Fenn went to the center. He made offensive comments to tenants. He made other tenants feel afraid for their safety. He solicited business without a license, which he was ultimately convicted for. He, uh, later created concern about the possibility for damage and theft of expensive items at the center. And all of this is wrapped up in the idea counsel's correct. The police went down to see Mr. Hicks and they, they asked him to sign the order. And what he signed the order based on was as a preventative measure based on prior incidents. And that's complaint paragraph 33. And that is the crux of this. It is not protected conduct that resulted in the trespass order being signed. And Mr. Hicks would have no notice that signing a trespass order under those circumstances would constitute a first amendment violation. Well, is it a given that Mr. Hicks is entitled to qualified immunity at all? Is he the client in the class of persons that is entitled to qualified immunity? I'm getting to the point where I'm wondering who isn't entitled to qualified immunity, only private employees. Well, Mr. Hicks is, is, is a, he's a state employee suit in his individual capacity. And that, that under the current law entitles him to raise a qualified immunity defense, your honor. And I apologize. I have to, I have to defer to my co-counsel. He has different clients and I don't want to, I want to be respectful of his time. Thank you, counsel. Let's hear then from Mr. Standridge. Mr. Chief judge, may it please the court. I too want to start by addressing the three authorities, the three supplemental authorities that I filed on behalf of the truth of consequences defendants in the past couple of months. In each of those cases, two of which came from this court, Hinkle and Esprit. The plaintiffs, the persons complaining that their first amendment rights were violated by an arrest had in fact engaged in some sort of arguable criminal conduct for which the police had arguable probable cause at a minimum to arrest them. That is precisely the case we have before the court today. Contrary to what the plaintiff has presented in his case in chief, this doesn't begin and end with Mr. Hicks signing the trespass notice in 2017. What the plaintiff has ignored in both his argument and his opening brief is the two years of history that I think judge Bacarach had touched upon earlier today. The two years of historical facts, the two years of complaints by other tenants of the Johnson Center in truth or consequences about the plaintiff's disruptive and threatening conduct, not complaints about the message or content of his protest against the spaceport itself. These are the historical facts that supported the arrest and charge of plaintiff in June of 2017. And that's the first fundamental flaw in Mr. Fenn's case is that at no time has he established a lack of probable cause or indeed a lack of arguable probable cause that would be required for him to overcome the police defendant's entitlement to qualified immunity in this case. The second fundamental flaw is Mr. Zorowski has so expertly noted is that the plaintiff has not come before this court with any clearly established law, either from this circuit, from the United States Supreme Court, or from the great weight of authority from other plaintiffs in the United States Supreme Court, to come before this court with a criminal complaint. We're subject to clearly established, we're considered to be clearly established violations of a plaintiff's constitutional rights, specifically under the First Amendment. What the plaintiff has failed to do is tie his allegations of of the alleged manufacture of probable cause. What he has argued is that issuing these trespass orders was akin to making up facts in support of an arrest warrant or in support of a criminal complaint, such that he would be entitled to proceed with a malicious prosecution claim. The problem for the plaintiff is no 10th Circuit case has ever made that equation. No United States Supreme Court case has ever made that equation. And certainly the weight of other circuits has not done so. I look at the Blankenhorn case that we cited, and we look at the at the actual acts, the behavior that is the violative behavior, because otherwise, if you don't have some kind of factual standard, I could see a situation where a an airport manager, for example, hired a public employee can issue a trespass order against the very type of person that I was describing, a pamphleteer, a person expressing unfavorable, unpopular public opinions. What is the actual behavior here that causes this entry of this trespass order, trespass authorization? Thank you, Judge Lucero. It is not simply the pamphleteering. It is not simply trying to convey a message, as the plaintiff has tried to characterize it, is instead the threatening and disruptive acts that were reported to the Truth and Conscience Police Department by various tenants of the Lee Bell Johnson Center, including... What does the record tell us about those acts? Because that's pretty conclusory. I'd like to know what the actual acts are that the record supports. I think the record actually comes, in first instance, from plaintiff's own complaint, just by way of example, one of the complaining persons. Because, as Judge Bachrach notes, this is a motion to dismiss, so what does the complaint tell us? The complaint tells us that a number of persons at the Lee Bell Johnson Center, not just Spaceport Authority employees, had complained in the past couple of years about the plaintiff being on the property and engaging in threatening or harassing conduct. For example, a woman named Rosemary Bleff had reported to police that... He denies this, I presume. He denies this. Oddly enough, Your Honor, he pleads it in his own complaint. He pleads the historical facts. He pleads that Ms. Bleff had identified the plaintiff to the police as a disruptive person. He also pleads and readily admits that he was convicted there at the Johnson Center of being on the property and conducting business without a license. And in fact, he attaches a number of documents supporting those allegations to his own complaint. We then fleshed that out, Your Honor, in our summary judgment motion, which was within the exhibits that were attached there, too, which was in our supplemental appendix that contained the actual criminal complaint filed by Chief Valiras and the police reports that were generated. And I want to back up a second. I do want to note, I represent two officers, Chief Valiras and Captain Apodaca. In neither instance, for a false arrest or false malicious prosecution, did Chief Apodaca either arrest, or pardon me, Captain Apodaca either arrest the plaintiff or file any charges against him? Is this case before us on summary judgment or under a rule dismissal? It's a little bit of both, Your Honor. Both defendants had initially filed a motion to dismiss count one, the false arrest claim. But you fled and the facts developed a discovery such that summary judgment is warranted at this stage already? We did, Your Honor. It was based on two things. It was based on the documentation attached by plaintiff to his own complaint and supplemental records or additional records that we were able to pull from the public records, specifically the criminal case that plaintiff litigated after the charges were filed against him. We pulled not only the criminal complaint, but plaintiff's initial state court motions to dismiss where he alleged, as he does here, that there was no probable cause to file these charges against him. And the plaintiff lost on that point in state court. So, this was actually litigated in state court and the same result should lie here. So, we ask for affirmance of the district court's opinions. Thank you. Thank you, counsel. Let's see, was there any some rebuttal time for Mr. Dunn? Thank you, Your Honor. To briefly touch on the last point, I think that we've drilled down sufficiently what we're talking about. At no point in our complaint did we say that Mr. Finn agreed with the allegations of his conduct. In fact, it's quite the opposite. That's the point, is that the facts as they're alleged in the complaint say that these people made these allegations, but that was unfounded because his actual conduct as we've alleged in the complaint, and the court should have taken as true, is that he, because there really isn't any evidence to the contrary, is that he wasn't engaged in any sort of offensive or hostile or threatening conduct as was falsely alleged by the people who obtained the first two trespass orders. What's important is that the trespass order that we're here on today, there's absolutely no factual support for the idea that he was in there again, if he had been the first time, threatening and acting in a hostile manner. That's just not there. They didn't like the fact that he was there, and they tried to manufacture an excuse as to why they needed to exclude him, and excluding somebody from a traditional forum does have a body of case law that backs it up, for instance, the Nylander case, which we did cite to in our briefing. So we have brought that before the court, and I know my time has expired, so thank you. Thank you, counsel. We appreciate counsel's excuse, and the case is submitted. Thank you. Thank you, Your Honors. Thank you, Your Honor.